## HOLLINGSWORTH *v.* FLINT.

In an action of trespass to try the title to lands in Texas, the plaintiff put in evidence a grant of them to A., as shown by certified copies of papers from the general land-office of that State. He then offered a deed from A. to B. for other and different lands, and one from C. and wife, the latter being the only heir-at-law of A., reciting that there was a misdescription in A.'s deed, and releasing, alienating, and conveying to B. the lands in the declaration mentioned. The acknowledgment of the deed of C. and wife required by the laws of that State to pass the estate of a married woman was not made until after the commencement of the suit. The plaintiff also offered a deed to him from the heirs-at-law of B. for all the lands belonging to the latter at the time of his decease or to which he was then entitled, but did not propose to show that B. had any title to the lands other than that shown by the other deeds. The deeds were excluded, and the jury instructed to find for the defendants. *Held,* that the action of the court was proper.

ERROR to the Circuit Court of the United States for the Western District of Texas.

This was an action of trespass to try the title to certain lands in Texas, brought by Thomas J. Hollingsworth against John T. Flint and D. T. Chamberlain. Flint filed a disclaimer of title. Chamberlain also filed a disclaimer as to several tracts embraced in the eleven leagues sued for, and as to the remainder pleaded not guilty and the Statute of Limitations. The jury found a verdict for the defendants, and judgment having been rendered thereon, Hollingsworth sued out this writ of error.

The remaining facts are stated in the opinion of the court.

*Mr. Philip Phillips, Mr. Bethel Coopwood,* and *Mr. W. Hallett Phillips* for the plaintiff in error.

*Mr. A. W. Terrell, contra.*

MR. JUSTICE HARLAN delivered the opinion of the court.

This is an action in trespass to try the title to eleven leagues of land situated in the counties of Bell, Milam, and Williamson, State of Texas, on what was once called San Andres River, now known as Little River, a tributary of the Brazos.

In support of his claim the plaintiff read in evidence, without objection, certified copies from the general land-office in Texas, of numerous papers, constituting, together, a grant of the land in controversy to Miguel Davila, a native and resident of Leona

Vacario, the capital of the department of Coahuila and Texas, as constituted in the year 1830. These papers, including the official survey made by the surveyor-general, show that the land embraced in that grant was " located on the right or south bank of San Andres River, at the point where the creeks — Buffalo Creek and Donahoe's Creek — empty into said river." The limits, boundaries, and corners of the land thus granted are given in detail.

The plaintiff then offered in evidence an original deed, in the Spanish language, purporting to have been executed by the grantee, Davila, to James Hewetson, at the city of Saltillo, on the 7th of May, 1839, before its acting mayor, and by which Davila sold and conveyed to Hewetson, for the consideration of $200, "eleven leagues of land, obtained from the public domain by virtue of a permit issued for them to him by the executive of the State of Coahuila and Texas, by order of July 13, 1830, which leagues are situated *ten* on the waters of the creek called *Chocktaw of the Red River*, and *the eleventh* between *Sulphur Fork Creek of Red River, and the south fork of said creek*, distant about twenty miles west of the road leading from Nacogdoches to Kiamichi, *of the same Red River*, the survey of which is embodied in the patent issued *at Angelina, jurisdiction of Nacogdoches*, on the 30th of January, 1836, by *Don Vicente Aldrete*, commissioner appointed for that purpose by the aforesaid executive." That patent the officer before whom the deed was executed certified he had *seen*, *read*, and *then passed and delivered to Hewetson*.

In connection with the offer to read that deed the court, by request of the defendants, and without objection upon the part of the plaintiff, considered certain other papers, also certified from the general land-office in Texas, which, together, constituted the title or grant to Davila of eleven leagues of land in the Red River region, the locality and boundaries of which, as set forth in those papers, corresponds exactly with the foregoing description of the eleven leagues embraced in the deed to Hewetson.

The defendants then objected to the introduction of the Hewetson deed upon the ground that it did not convey, or purport to convey, the land in controversy, and was, therefore, irrele-

vant and inadmissible. The objection was sustained, and the deed excluded, to which action of the court the plaintiff excepted.

1. This ruling of the court below is the subject of the first assignment of error. We are of opinion that the deed was properly excluded. The plaintiff's petition alleged title in himself to eleven leagues of land, granted to Miguel Davila, described as eleven leagues of land " situate on the right or south bank of the *San Andres River, at the place where Buffalo Creek and Donahoe's Creek empty into said river.*" The papers read in evidence by plaintiff, and constituting the final title, as shown upon the records of the general land-office, to the eleven leagues thus described, show that the survey of *that* body of land was made by Surveyor-General Johnson, and that the patent, based upon that survey, was issued Oct. 18, 1833, by L. Lessassier, mayor of the city of San Felipe de Austin. We have seen that the deed from Davila to Hewetson describes eleven leagues of land situated in a different part of the State, distant, as the court may judicially know, about two hundred miles from the land described in the petition and in the papers previously read in evidence as constituting the grant to Davila of the land in dispute. This is rendered absolutely certain by an examination of the several papers constituting the grant to Davila of the eleven leagues of land on the waters of Red River.

From those papers it appears, —

That on the 10th of July, 1830, Davila made application for a grant by sale to him of eleven leagues of land of the public domain of the department of Coahuila and Texas;

That this application was granted on the 13th of July, 1830, with an order to the alcalde of the municipality to put Davila in possession after the land was located;

That on the 17th of May, 1834, Davila executed to James Hewetson an irrevocable power of attorney, authorizing him to select out of the public domain of the State the eleven leagues of land conceded to Davila in the year 1830 ;

That on the 5th of June, 1834, Hewetson executed to M. B. Menard, of Nacogdoches, a power of substitution, which on the 24th of May, 1835, was revoked, and the authority which Hewetson had received from Davila was conferred upon one John Cameron ;

That on the 27th of July, 1835, George Aldrich, surveyor, under an order from the special commissioner appointed by the governor of the State, of date July 2, 1835, surveyed one of the eleven leagues " between Sulphur Fork of Red River and the south branch of said creek, about twenty miles west of the road leading from Nacogdoches to Kiamichi, of the Red River;" and on the 3d of November, 1835, he surveyed the remaining ten leagues "on the waters of the creek called Choctaw Bayou of Red River;"

That these surveys were transmitted to the special commissioner, who, by order of Jan. 30, 1836, directed title to issue; and it was so issued on that day, the final paper describing the land exactly as set forth in the deed to Hewetson, and referring, by way of identification, to the field-notes of the surveyor, Aldrich.

While the origin of the title of the eleven leagues on the San Andres River, as well as of the eleven leagues on the Red River, may have been an application of Davila on the thirtieth day of July, 1830, it is perfectly clear that there were, in fact, surveys of two distinct bodies of land, widely separated, resulting in grants to Davila of two different tracts of eleven leagues each. This is shown, partly, by the fact that the final document in the title for the eleven leagues on the San Andres River was executed by Lessassier on the 18th of October, 1833, at San Felipe de Austin, while that for the eleven leagues on Red River was executed by Special Commissioner Vicente Aldrete, at Angelina, and not until Jan. 30, 1836. The former body of land was embraced in one survey, made by Surveyor-General Johnson, while the latter was surveyed by Aldrich, and was embraced in two surveys, one of which called for ten leagues, and the other for one league.

It thus appears that the plaintiff, in support of his title to eleven leagues of land on the *San Andres River*, offered to read a deed which upon its face clearly and, in connection with the papers relating to the *Red River* lands, incontestably showed that the land it purported to convey was not the land described in the petition, and the title to which was in dispute.

The contention of the plaintiff is that it was for the jury to say whether the land described in the Hewetson deed was the

same land which in the title papers read in evidence was described as situated on San Andres River. No such conclusion could, however, have been fairly reached by the jury consistently with the evidence. The deed was unambiguous in its terms; and whether interpreted by its own language, or in the light of the papers constituting the grant to the Red River lands, there was no ground whatever to infer that Davila, by the conveyance of lands on Red River, intended to convey the title to lands on San Andres River.

Whether the grant to Davila of the lands on Red River was void by reason of the prohibition against uniting more than eleven leagues in the same lands, or because of the declaration in the Texas Constitution of 1836, to the effect " that all surveys and locations made since the act of the late consultation closing the land-offices and all titles made since that time are null and void," it is not necessary to inquire. For, if that proposition be conceded, it is nevertheless manifest that the papers constituting the grant to the Red River lands, read without objection, were evidence in illustration or explanation of the excluded deed; and they utterly negative the idea that the grantor, by a conveyance of eleven leagues, situated on the Choctaw and Sulphur Creeks of the Red River (quoting from the deed), " the survey of which is embodied in the patent issued at Angelina, jurisdiction of Nacogdoches, on the thirtieth day of January, 1836, before Don Vicente Aldrete, commissioner," &c., intended to pass the title to eleven leagues of land on San Andres River, the final title to which passed by patent issued Oct. 18, 1833, at the city of San Felipe de Austin, by L. Lessassier, mayor of said city and its municipality.

It is scarcely necessary to cite the authority of text-writers, or of adjudged cases in the Supreme Court of Texas or elsewhere, to prove that the deed was inadmissible as evidence in support of plaintiff's title to the land described in the petitions and in the papers read in evidence by him as constituting the original grant to Davila of eleven leagues on San Andres River. The deed conveys lands that were surveyed and located in the Red River region. It was, therefore, inadmissible for the plaintiff in this action, in any view which may be properly taken of the case.

2. The plaintiff then offered in evidence a deed from Inez (the legitimate daughter and only heir-at-law of Miguel Davila) and her husband, dated Sept. 28, 1869. It was acknowledged by the wife on the 12th of September, 1876, upon privy examination before the consul of the United States for Saltillo and its dependencies, and by the husband a few days thereafter. That deed recited that Miguel Davila had many years before sold to James Hewetson his concession of eleven leagues of land on the San Andres River, and had on May 7, 1869, by public act conveyed the same to said Hewetson, " describing said land *by mistake* as being situated in another part of Texas instead of where it was in fact situated." The deed ratifies and confirms the sale to Hewetson, and releases and conveys to him all the right, title, and interest of the grantors.

That deed, upon the objection of defendants, was also excluded, which ruling constitutes the next error assigned by the plaintiff.

No error was committed in rejecting that deed as evidence in support of plaintiff's claim. This action was commenced in 1874. At that time the deed had not been acknowledged so as to pass the title, if any, which the female grantee had in the premises in controversy. Her interest in the land, if any she had, was her separate estate, of which she could not, under the laws of Texas, be divested, except by the conveyance of herself and husband, and after her privy examination before the proper officer. Such examination had not taken place when this action was commenced. The plaintiff could not avail himself in this action of a title acquired, or which did not subsist in him until, after he commenced suit. The title at the beginning of the action was the question to be tried.

3. The plaintiff finally offered to read in evidence a deed purporting to have been executed in 1873 by the heirs of James Hewetson to the plaintiff and another. This deed was very properly excluded upon the ground that the plaintiff had failed to connect himself with the sovereignty of the soil, and declined to state that he expected to show any other title than that previously offered.

The court thereupon instructed the jury, as was its duty to do, to find for the defendants.

*Judgment affirmed.*