AMERICAN BONDING & TRUST CO. et al. v. GIBSON COUNTY.

(Circuit Court of Appeals, Sixth Circuit. June 20, 1906.)

No. 1,457.

1. ACTION—PREMATURE COMMENCEMENT—ACCRUAL OF CAUSE OF ACTION PENDING SUIT.

A plaintiff's right to recover depends upon his right at the inception of the suit, and the nonexistence of a cause of action when the suit was begun is a fatal defect, which cannot be cured by the accrual of a cause of action pending suit.

[Ed. Note.—For cases in point, see vol. 1, Cent. Dig. Action, §§ 718–723.]

2. SAME.

Where a judgment against a building contractor and his surety was reversed because of the failure of the plaintiff to allege or prove that its claim had been audited and certified by the architect, which, under the terms of the contract, was essential to give a right of action, or that such certificate had been wrongfully refused, the action could not be sustained upon an amendment of the declaration showing that such certificate was procured after the reversal, but without alleging that it had previously been refused.

In Error to the Circuit Court of the United States for the Middle District of Tennessee.

Quinton Rankin, for plaintiffs in error.
A. W. Biggs, for defendant in error.

Before LURTON, SEVERENS, and RICHARDS, Circuit Judges.

LURTON, Circuit Judge. This was an action brought by Gibson county upon a building contract against George D. Winston as principal and the American Bonding Company as surety. At a former term of this court a judgment in favor of the plaintiff was reversed, and a new trial awarded. The nature of the suit and the ground of reversal appear in the opinion of this court. 127 Fed. 671, 62 C. C. A. 397. Upon a second trial the plaintiff again recovered judgment, and the defendants have sued out a second writ of error.

The plaintiff in error, George W. Winston, in copartnership with one Huggins, and under the firm name of Huggins & Winston, contracted to furnish the material and construct a courthouse according to plans and specifications. The American Bonding & Surety Company became their surety. The contract was in writing. The questions now involved arise under the fifth article, which was as follows:

"Article 5. Should the contractors at any time refuse or neglect to supply a sufficiency of properly skilled workmen, or of materials of the proper quality, or fail in any respect to prosecute the work with promptness and diligence, or fail in the performance of any of the agreements herein contained, such refusal, neglect, or failure being certified by the architect, the owner shall be at liberty, after three days' written notice to the contractors, to provide any such labor or materials, and to deduct the cost thereof from any money then due, or thereafter to become due, to the contractors under this contract; and if the architect shall certify that such refusal, neglect, or failure is sufficient ground for such action, the owners shall also be at liberty to terminate the employment of the contractors for the said work, and to enter upon the premises, and to take possession for the purpose of completing the work comprehended under this contract of all materials, tools, and appliances thereon, and to employ any other person or persons to finish the work, and to provide the materials therefor; and, in case of such discontinuance of the employment of the contractors, he shall not be entitled to receive any further payment under this contract until the said work shall be wholly finished, at which time, if the unpaid balance of the amount to be paid under this contract shall exceed the expenses incurred by the owner in finishing the work, such excess shall be paid by the owner to the contractors, but if such expense shall exceed such unpaid balance, the contractors shall pay the difference to the owner. The expense incurred by the owner, as herein provided, either for furnishing the materials or for finishing the work, and for any damage incurred through such default, shall be audited and certified by the architects, whose certificate thereof shall be conclusive upon the parties."

The contract price of the building was to be paid in six installments as the work progressed, and a final payment of $9,581 when the work was completed. The evidence tended to show that the contractors did all of the work except that covered by the final payment, and that they had been paid the installment payments substantially as they were earned. There was evidence of delay and neglect in the later stages, and on August 2, 1900, the architect, in accordance with the article above set out, certified that the contractors were refusing and neglecting to prosecute the work as they were bound to do, and that their breach of the agreement was such as to terminate their employment, and to authorize the county to enter upon the premises and employ other persons to complete the work, etc. Upon due notice the county took possession, and caused the building to be finished as provided by the agreement. Thereupon this suit was brought to recover the cost of so completing the building over the final payment due under the contract, and damages arising from the default of the contractors.

Upon the former trial it was neither alleged nor proved that the cost and damages sustained by the plaintiff in finishing the building had been audited and certified by the architect as provided by the provision of the contract above set out. Neither was there any evidence tending to show that the architect had illegally refused to audit and certify upon request. In many ways the defendants made this objection and saved exception. For this error we reversed the judgment, and directed a new trial.

The opinion of this court as officially reported shows that the judgment of this court was based upon two points: (1) That the right of action which inured to the plaintiff was one for the damages provided by the contract resulting from a violation of its provisions, and none other. (2) That the contract provided the manner in which the cost and damages incident to the default of the contractors and the completion of the building by the owner should be determined, and that no right of action for such cost and damage accrued until the claim had been duly audited and certified by the architect, or a certificate wrongly denied upon request. It was therefore open to the plaintiff to amend its declaration, if such was the fact, by averring that before suit commenced it had caused its expenses and damages growing out of the default of the contractors to be audited and certified as provided by the contract, or that the architect had illegally refused to so audit and certify, though requested so to do. This the county did not do, but so amended its declaration as to show that since the reversal of the former judgment it had caused its claim to be audited and certified without averring or showing that the architect had before suit brought fraudulently refused to audit and certify same.

The plain meaning of that part of article 5 of the agreement applicable to the facts of this case was that the contractors and their surety should only be liable for the expense of finishing the building, and for the damages provided for delay due to the default of the contractor when such cost and damage over and above the contract price should be audited and certified by the architect. Until that was done, no right of action under the fifth clause of the contract accrued, and

this construction of the contract was the law of the case from which the court below was not authorized to depart.

Plaintiff's suit was prematurely brought, and no amendment declaring upon a cause of action which did not exist when the suit was commenced would cure such a defect. If no cause of action existed when the suit was started, there was nothing to amend, and when this fact appeared, and objection was made, the suit should have been dismissed without prejudice to an action upon the cause of action which did accrue when the architect audited the claim. It was not a case of a cause of action defectively stated. Such a defect is amendable. Neither was it a case of a new cause of action brought in by amendment, which existed when the suit was brought. It was an effort to declare and recover upon a cause of action which arose pending the suit.

Plaintiff's right to any recovery depended upon its right at the inception of the suit, and the nonexistence of a cause of action when the suit was started is a fatal defect, which cannot be cured by the accrual of a cause pending suit. De Mattos v. Jordan (Wash. Dec. 6, 1898) 55 Pac. 118; Hollingsworth v. Flint, 101 U. S. 591, 596, 25 L. Ed. 1028; Wadley v. Jones, 55 Ga. 329; Moon v. Johnson, 14 S. C. 434; Linn v. Scott, 3 Tex. 67; Wetherell v. Evarts, 17 Vt. 219; Jennings v. Zerr, 48 Mo. App. 528; Turner v. Pierce, 31 Wis. 342; Bell v. Bullion, 2 Yerg. (Tenn.) 479; Carter v. Turner, 2 Head (Tenn.) 52; Robinson v. Grubb, 8 Baxt. (Tenn.) 19; Pigue v. Young, 85 Tenn. 263, 1 S. W. 889; Blevins v. Alexander, 4 Sneed (Tenn.) 588. In Bell v. Bullion, cited above, it was held that prematurity of suit was ground for arrest of judgment when the fact appeared upon the record. In Carter v. Turner, cited above, it was held to be matter in abatement or demurrer according as the fact appeared or not upon the record. To the same effect are Hovey v. Sebring, 24 Mich. 232, 9 Am. Rep. 122; Weirnwick v. Bender, 33 Mo. 80; Storm v. Livingston, 6 Johns. (N. Y.) 45; Dean v. Metropolitan R. Co., 119 N. Y. 540, 23 N. E. 1054; Scott v. Fowler, 14 Ark. 427; Barnes v. Gibbs, 31 N. J. L. 317, 86 Am. Dec. 210. When prematurity appears, the suit should be dismissed without prejudice to the right to institute a suit upon the cause of action when mature. 16 Ency. Pl. & Pr. p. 875; Loomis v. Donovan, 17 Ind. 198; Durgee v. Turner, 20 Mo. App. 34; Green v. De Moss, 10 Humph. (Tenn.) 371, 377.

That plaintiff had no right of action outside of the contract under the facts of this case we expressly decided upon the former hearing. The only reason advanced upon the former trial for not producing the architect's certificate was that the contractor had abandoned the contract, and that plaintiff might therefore sue for and recover the damages resulting from such abandonment. Touching this we said:

"The distinction sought to be drawn by the plaintiff, that the suit is not one on the contract, but one for damages on account of the abandonment of the contract, does not appeal to us. This is not a case like Fuller Company v. Doyle (C. C.) 87 Fed. 687, where the contractor, without doing any substantial work, abandoned the contract, but a case where the contractor, having done all the work except that covered by the last payment, had his employment terminated under article 5, through strict compliance with its provisions. The damages sought to be recovered here are not damages outside the contract, but damages under the contract, resulting from a violation of its provisions."

What we then decided is the law of this case, and there was no substantial difference between the case as presented then and now. The court therefore erred in instructing a verdict for the plaintiff. The proper instruction would have been to find for the defendants upon the ground of the prematurity of the plaintiff's action. Elder v. Rourke, 27 Or. 363, 41 Pac. 6; Burt v. Wilcox Co., 41 Ohio St. 204, and Green v. De Moss, cited above.

We forego all consideration of the question of the contractual limitation contained in the contract with the Surety Company. No such question can be considered, in view of the premature character of the plaintiff's suit.

Reverse, and remand for new trial, in accordance with opinion of this court.