David COHEN et al., Plaintiffs,

v.

**DISTRICT OF COLUMBIA NATIONAL BANK et al., Defendants.**

Civ. A. No. 2110–69.

United States District Court,
District of Columbia.

March 27, 1974.

Anthony Z. Roisman, Washington, D. C., for plaintiffs.

Daniel M. Gribbon, Washington, D. C., for D. C. National Bank.

## OPINION

GASCH, District Judge.

This matter came before the Court upon cross-motions for partial summary judgment. This hearing, in effect, is to determine the first substantive issue in this cause of action: was the method by which defendant District of Columbia National Bank (the Bank) computed interest on the personal, unsecured installment loans of plaintiffs David and Carla Cohen and Susan Davis usurious due to the Bank's failure to take the declining balance of principal into consideration?[1]

As will be seen, this question has broad ramifications, particularly since the named plaintiffs represent a certified class of borrowers from the District of Columbia National Bank. Therefore, while this opinion relies upon the specific instances of three loans—one by the Cohens and two by Susan Davis—the broader question also being decided is whether or not the Bank extracted usurious interest from any borrower of sim-

---

1. The controlling statute in the District of Columbia is 28 D.C.Code § 3301:

    The parties to an instrument in writing for the payment of money at a future time may contract therein for the payment of interest on the principal amount thereof at any rate not exceeding 8 percent per annum.

ilar loans from the time such loans were first made by the Bank to the filing of this lawsuit July 28, 1969.[2] At the same time, this opinion is limited to the question of whether the practice complained of was usurious. No question concerning damages is under consideration.

The specific issue raised here appears to be one. of first impression in the District of Columbia and the federal system. This may be accounted for by a unique factual pattern: it has apparently been the long-standing practice of District of Columbia banks to make personal unsecured loans under a different system of computation than secured loans, such as mortgages. Because this long-standing difference exists and forms the backbone of the Bank's defense, the Court will attempt to identify the various decisions discussed as involving either secured or unsecured loans. It will become apparent, however, that courts in other jurisdictions have not had occasion to make this distinction, perhaps due to the absence of a similar factual situation.

After a discussion of the factual background and the issues in general, the Court will review related District of Columbia case law, then discuss general principles of law, including many state cases more closely in point than the District of Columbia cases. The Court will then turn to the Bank's arguments as to the impact of long-standing custom and usage on the practice at issue.

## I. Background matter.

Previous hearings in this cause have centered around procedural matters. On June 30, 1971, a Memorandum-Order was entered which dismissed the two organizational plaintiffs, thus leaving only individual plaintiffs, and granted plaintiffs' motion for separate trials on the usury and antitrust counts of the complaint, giving priority to the former. Questions as to the propriety of class action and joinder of certain other parties were continued. On October 18, 1972, a second Memorandum-Order was entered, in reference to the usury issue only, which, after careful consideration of Fed.R.Civ.P. 23(a) and relevant cases, certified a class composed of "all members who, because of the computational method used and the various charges imposed, have been allegedly required to pay money in excess of the . . . limit of 8 percent per annum on the loans which they have transacted with a *particular* bank."[3] Because loan policies differ from bank to bank, this was the only manner in which a class of borrowers could properly meet the "commonality" test of Fed.R.Civ.P. 23(a)(2). At the same time, defendants' motion to have separate trials as to the usury claims asserted against them was granted, plaintiffs' motion to add eleven additional defendant banks was denied as improper under Fed.R.Civ.P. 18(a) and 20(a), and a ruling on plaintiffs' motion to join additional plaintiffs and two additional banks was deferred. At that time, the Court indicated the first trial would be as to the first-named defendant, the District of Columbia National Bank. Finally, a third Memorandum-Order was issued August 2, 1973, holding in abeyance plaintiffs' motion for approval of a proposed notice to be sent to all members of the class certified as to the Bank. Because the Bank fully realized and agreed to the possible consequences of proceeding to trial without notice to the class, and because all parties were aware of the potential for saving a great deal of time and expense, the Court ordered the parties to proceed to the merits.

The basic underlying facts as to these loans not being in dispute,[4] oral argu-

2. It should be noted without prejudice to the position of either party that the Bank no longer computes interest by the method complained of here. The enactment in 1971 of 28 D.C.Code § 3308 provides an alternative method of charging interest on such loans. See note 81, *infra*, and accompanying text.

3. 59 F.R.D. 84, 89 (D.D.C.1972) (emphasis in original).

4. Some procedural clarification is required here. Plaintiffs moved for partial summary judgment September 21, 1973, submitting a statement of material facts in accordance

ment on the question of usury as to the District of Columbia National Bank was heard on cross-motions for partial summary judgment January 17, 1974. In order to facilitate consideration of the arguments then made, it would be useful to review the circumstances of the loans made to the named plaintiffs representing the class certified as to the Bank:

1. David and Carla Cohen executed a loan October 4, 1968, receiving $747.72. They were obligated to repay $804.00 in twelve equal monthly installments of $67.00. The Bank designated $48.24 as interest for the loan; the remaining $8.04 is accounted for by a $4.83 fee for credit investigation and processing, and a $3.21 premium for credit life insurance.[5]

2. Susan Davis, with plaintiff Jane Hardin as an endorser, executed a loan June 19, 1968, receiving $591.48. She was obligated to repay $636.00 in twelve equal monthly installments of $53.00. The Bank designated $38.16 as interest; the remaining $6.36 is accounted for by a $3.82 fee for credit investigation, and a $2.54 premium for credit life insurance.[6]

3. Susan Davis executed another loan July 3, 1969, receiving $600.00. She was obligated to repay $652.08 in twelve equal monthly installments of $54.34. The Bank designated $45.56 as interest for the loan; the remaining $6.52 is accounted for by a premium for credit life insurance in that amount.[7]

II. The Issues.

Briefly, plaintiffs' position is that under District of Columbia statute and case law, the interest charged these borrowers (and all other members of the certified class with regard to their loans) was in excess of eight percent per annum, because the interest was charged without regard to what is called the "declining balance" of the principal.[8] Defendant counters with the proposition that computation without regard to the declining balance is and has always been a fully and widely accepted practice in the District of Columbia and enjoys executive and Congressional acquiescence. As such, defendant contends, this established custom and usage must be given great weight, leading to the conclusion that there was no usury here.

Before examining the pertinent case law, it will be helpful to note the various types of loans that will be discussed later so as to avoid confusion.

---

with Fed.R.Civ.P. 56(c), with supporting affidavits, that consisted only of a recital of the terms of these three loans made by the District of Columbia National Bank. The Bank moved for partial summary judgment October 26, 1973, submitting a statement of material facts, with supporting affidavits, that admitted the facts of plaintiffs' loans but also dealt with banking practices in the District of Columbia with regard to this type of loan. For purposes of their motion, plaintiffs do not dispute defendant's statement; for purposes of defendant's motion, however, plaintiffs do take issue with certain characterizations of the customs and usages outlined by the Bank. Because the Court has come to the conclusion that plaintiffs should prevail even granting fully the accuracy of defendant's statement of material facts, plaintiffs' objections to these facts will not be considered, and these motions will simply be treated as cross-motions for partial summary judgment upon agreed facts.

5. Plaintiffs' Statement of Material Facts as to which there is no Genuine Issue (filed September 21, 1973). The information for the credit investigation, processing and credit life insurance fees is taken from defendant's Answer to the Complaint at 2 (filed February 20, 1970).

6. Defendant's Answer to the Complaint at 2–3.

7. *Id.* at 3.

8. It is appropriate to note that plaintiffs have limited their argument to those charges designated as interest by the Bank. As can be seen from the statement of the three loans, there are charges levied in addition to that designated as interest. Plaintiffs reserve on the question of whether or not these charges constitute additional interest extracted, contending that the charges designated as interest are by themselves usurious. Plaintiffs' Memorandum of Points and Authorities in Support of Motion for Partial Summary Judgment at 2, n. 3.

This lawsuit concerns personal, unsecured installment loans, all of which were of one year's duration.[9] In making these loans, the Bank tendered a certain amount of money and began almost immediately to collect a return on that money by requiring monthly payments, or installments. Although there was evidently no formal schedule issued to show how those payments were to be credited as between interest and principal, the payments were such that principal was clearly being repaid from the first installment.[10]

Similar to such installment loans are personal, *secured* loans, such as automobile loans and mortgages. Most cases have dealt with the mortgage situation, and that case law is uniformly to the effect that interest can be computed only with regard to the principal outstanding as payment upon the mortgage continues. This may be referred to as computing interest on the "declining balance of principal" or simply "declining balance."[11]

Another type of loan is a discount loan, where the interest on the loaned principal sum of money is deducted, or discounted, at the time the loan is made. Thus, a loan for $1,000 for one year at eight percent has interest due in the amount of $80. This $80 is discounted immediately, and the lender tenders $920 to the borrower; at the end of the year, the borrower must repay $1,000. A narrow exception to the usury statutes has been carved out in the case of certain discount loans.[12]

As is readily apparent, the loans just discussed have two distinctive features: one type has periodic payments, or installments, required (declining balance loans) and the other has certain lump sum payments required (discount loans). The distinction will become important in applying analogous case law to the situation at bar.

Unfortunately, matters can be further confused by the fact that it is possible both to discount a loan and to require it to be paid back in monthly installments. Thus, for example, on a loan of $1,000 for one year at eight percent, the lender could discount it and tender $920, then require monthly payments of $76.66 for the remainder of the term.

In the present case, plaintiffs have not alleged what sum of money was the original principal involved in their loans, and from the sum tendered, it is not clear whether or not the Bank discounted these loans. However, the Bank has stated that it "had always employed the 'discount' method in making its installment loans, calculating interest with reference to the amount borrowed and the duration of the loan without regard to the declining principal balance and deducting such interest from the sum the borrower actually received."[13]

The thrust of the plaintiffs' claim is that the Bank ignored the declining balance of their loans when computing in-

9. Loans made by other members of the class may have been for shorter or longer periods of time; such variations would have no effect on the ultimate conclusions herein contained.

10. For instance, the total amount designated by the Bank as interest in the Cohens' loan was $48.24, but the first month's payment was $67.00. Even if the entire interest was credited immediately, at least $18.76 of principal was repaid. See Appendix, Computational Methods, Chart 1.

11. Thus, if one borrows $1,200 and agrees to pay the loan back in twelve monthly installments of $100, after the first such payment the principal balance declines to $1,100; aft-

er the second, to $1,000, etc. Interest may be computed upon such a loan in many different ways. See Appendix, Computational Methods.

12. The converse type of loan to the discount is the "add-on" loan, where interest is "added on" to the principal, and the whole sum is to be repaid at the end of the term. Thus, a loan for $1,000 for one year at 8 percent, bearing $80 interest, would have a tender of $1,000; at the end of the year, the borrower would have to repay $1,080.

13. Defendant's Memorandum of Points and Authorities in Support of Motion for Partial Summary Judgment at 7, fn.

terest, the result of which was to extract a usurious rate of interest with respect to the amount of loaned money actually within the control and at the disposal of plaintiffs. Thus, it is alleged that the borrowers were in possession of less principal as each periodic repayment is made. The principal balance steadily declined, and the borrowers used and controlled a steadily decreasing amount of money. Interest being essentially the charge for the use of money, plaintiffs argue that the Bank could not legally charge interest on money which the borrowers did not possess and could not use or control. Accordingly, plaintiffs allege that the interest collectible on these installment loans should have accounted for the continuously diminishing unpaid principal balance. It is clear, no matter which mathematical formula is employed,[14] that the Bank did not compute interest according to the declining balance, as the Bank frankly and readily admits. Plaintiffs allege that, by not so doing, the Bank exacted windfall payments of unjustified and unearned interest.

The Bank does not deny that the loans were made in the manner and amounts alleged by plaintiffs. It does, however, contend that the long-standing practice by and among District of Columbia banks has been to make personal, unsecured loans on an installment basis, charging interest against the entire principal for the full term, and that this custom and usage has gained such wide acceptance that the practice cannot now be considered usury. Further, the Bank places great reliance upon certain inaction of Congress, when confronted with questions relating to these loans, to show that there has been acquiescence and thereby implicit approval of this banking practice.

III. District of Columbia Law.

At the root of the question, of course, lies the District of Columbia usury statute:

The parties to an instrument in writing for the payment of money at a future time may contract therein for the payment of interest on the principal amount thereof at any rate not exceeding 8 percent per annum.[15]

█ The question the Court is called upon to answer is whether, in the context of personal, unsecured installment loans, this statute prohibits the Bank from computing interest without regard to the declining balance of the loans. In short, does principal amount, as used in the statute, refer to the original principal amount of the loan or does it refer to the actual principal amount which remains under the control of the borrower. After careful consideration of the au-

---

14. See Appendix, Computational Methods.

15. 28 D.C.Code § 3301. Eight percent per annum has been the maximum interest rate for written contracts since May 19, 1920, when Congress amended the original District of Columbia Code to reduce the rate from ten percent per annum. See 41 Stat. 555, 568 (Act of April 19, 1920), amending 31 Stat. 1377 (Act of March 3, 1901). The practices complained of were admittedly begun after 1920 in the Bank's case, it did not begin making such loans until 1962. See Defendant's Statement of Material Facts as to which there is no Genuine Issue at 1(c).

The adoption in 1902 of a code for the District of Columbia did not change the maximum interest rate permitted pursuant to written agreements. See 16 Stat. 91 (Act of April 22, 1870). Prior to that time, a 1704 Maryland statute had provided six percent per annum as the maximum rate of interest: "no person . . . upon any contracts . . . shall exact . . . for loan of any moneys . . . above the value of six pounds for the forebearance of one hundred pounds for one year, and so after that rate for a greater or lesser sum, or for a longer or shorter time . . . . Md. 1704, ch. 69, sec. 1, 2, and 3.

In 1971, 28 D.C.Code was amended to permit federally insured banks and savings and loan institutions to make personal, unsecured installment loans by charging a "finance charge" in lieu of interest, which charge could not exceed 11½ percent per annum (expressed as an Annual Percentage Rate under the Truth-in-Lending Act) on the unpaid balances of principal. 85 Stat. 665 (Dec. 17, 1971), codified as 28 D.C.Code § 3308 (1973).

thorities referred to by both parties and substantial research into relevant case law, it is the opinion of this Court that the statute does prohibit the Bank from so computing interest.

As was noted earlier, there is no District of Columbia case directly on the point of unsecured installment loans. Cooper v. United Security Life Ins. & Trust Co.,[16] however, provides a starting point. In that case, plaintiff obtained a loan of $4,600 evidenced by a bond and secured by a deed of trust on certain real estate. The bond enumerated the amount of monthly remittances to be made by plaintiff over a period of twenty years, which would extinguish the debt; however, no rate of interest was recited. Plaintiff made the payments faithfully for 15 years and five months, remitting $7,334.19. Plaintiff thereupon sought to be released from the bond, claiming that defendant could not obligate her to pay more than six percent interest, and that she had long since repaid the $4,600 at that rate.[17]

The court found that

> The obligation named in the bond was not the principal sum of $4,600, but the various monthly payments extending for a period of twenty years. The auditor found that the total of these payments embraced the principal sum with interest at 9 per cent per annum, *computed on the basis of the length of time each instalment had to run*. In other words, by the method adopted, the result was the same as if the contract had specifically provided for the payment of $4,600 in monthly payments extending through a period of twenty years, with annual interest thereon at the rate of 9 per cent. [Emphasis added.] [18]

The holding was that since there was a written contract to repay the loan at a rate actually less than the then maximum 10 percent, there was no usury. For our purposes, though, the method used to compute the interest is important: it was one that took into account the declining balance of principal, and it was so computed by the auditor of the court.[19] The presumption, then, is that for a personal secured loan, the declining balance was to be taken into account.

Atlantic Life Ins. Co. of Richmond v. Wolf[20] provides a similar insight. In that case, also involving a mortgage, plaintiff borrowed $32,000 and executed a promissory note for the same amount which provided for interest at 4½ percent per annum on the unpaid balance, with monthly installments of $244.80 for 15 years. Four and one-half years later, Wolf paid off the entire loan, including a prepayment premium of $1,090.77, representing 4½ percent of the outstanding balance at the time of prepayment. The question before the Municipal Court of Appeals for the District of Columbia was whether the prepayment constituted interest, and, if so, whether its payment rendered the loan usurious. The court ruled that the contract was non-usurious in its inception and the debtor's voluntary act thereafter could not render it usurious.[21] Since the note contained no prepayment clause, the court further held that it could not be considered interest under the usury statute.

However, the court went on to determine that even if the prepayment was

16. 33 App.D.C. 205 (1909).

17. At that time one could contract expressly for a loan bearing 10 percent interest; in the absence of a written agreement, however, the maximum rate at which interest could be charged was 6 percent. See note 15, *supra*.

18. 33 App.D.C. at 207.

19. *Id.* at 206, 207.

20. 54 A.2d 641 (D.C.Mun.App.1947).

21. This is well established law, based on the theory propounded in *Wolf* that the borrower is requesting a privilege by prepaying, and the lender, who has contracted for the right to receive monthly payments for the full term, may demand such a prepayment fee as compensation. *Cf.* 91 C.J.S. Usury § 29c. As to consideration of the full term of the loan, *see also* Montgomery Federal S. & L. Ass'n v. Baer, 308 A.2d 768 (D.C. 1973).

considered to be interest, the original agreement was not usurious. The court stated:

> *During the time the borrower had the use of the money,* the amount paid, aside from principal but including both the amount paid as interest and the extra payment of $1,127.12 [representing the prepayment premium of $1,090.77 and interest accrued thereon] was $7,115.22. During the same period, *and giving credit for payments on account of principal,* the amount chargeable at 8 percent (the legal interest rate in the District of Columbia on written contracts) would have been approximately $11,400. It results that even including the amount of the extra payment the sum received by the lender was considerably less than the lawful maximum interest computed to the date the loan was paid. [Emphasis added.] [22]

Thus, the court seemed routinely to focus on the element crucial to plaintiffs' argument: the time the borrower had use of the money, taking into account all repayments of principal during the term of the loan.

Another District of Columbia case that merits mention is Montgomery Federal S. & L. Ass'n v. Baer.[23] There plaintiff executed a note, secured by a mortgage, for $10,000. The lender charged four "points," [24] which were deducted from the amount tendered as a "loan placement fee." Thus, the lender actually tendered $9,600. The question before the District of Columbia Court of Appeals was whether that fee should be considered as interest [25] taken in the first year (which would render the loan usurious in that year) or whether it should be prorated for the full term of the loan.[26] The court decided that the latter test should apply and that the loan was not usurious even though interest in the amount of approximately $10\frac{1}{2}$ percent was collected for the first year.[27] Implicit in the court's decision is that the interest is calculated on a declining balance, as previous cases show to be the mortgage lending practice in the District of Columbia.[28]

One further noteworthy point in *Montgomery*: the District of Columbia Court of Appeals adopted the following definition of usury.

> We hold that a loan is usurious only if the total interest exacted exceeds that which would have been collected had the maximum lawful rate of interest been charged over the entire period of the loan.[29]

■ On its face, this definition would appear to support defendant's practice of charging interest upon the entire amount of the loan for the full term, while requiring periodic payments during the term. However, when viewed in the context of a mortgage loan, as was the case in *Montgomery*, it is clear that this definition contains the implicit understanding that the declining balance of principal· is taken into account throughout the term of the loan. The references above to Cooper v. United Security Life Ins. & Trust Co.,[30] and Atlantic Life Ins. Co. of Richmond v. Wolf,[31] clearly show that this was the

---

22. 54 A.2d at 643.

23. 308 A.2d 768 (D.C.1973).

24. A "point" is the equivalent of one percent of the principal amount of the loan—in this case, $100.

25. It was conceded that the charge was a form of interest. 308 A.2d at 770.

26. In this case, 19 years, 8 months.

27. The rationale was based on the finding by the court that the language in 28 D.C.Code § 3301 "at a rate not exceeding 8 percent per annum" referred to the chargeable rate of interest and is not intended to indicate time of payment. 308 A.2d at 771.

28. 308 A.2d ·at 771, 773. *See* Plaintiffs' Memorandum of Points and Authorities in Support of Motion for Partial Summary Judgment at 14, n. 21.

29. 308 A.2d at 773.

30. *See* note 16, *supra,* and accompanying text.

31. *See* note 20, *supra,* and accompanying text.

recognized and established practice in the District of Columbia. Therefore, for purposes of this case, the definition will be adopted with this understanding.

Another recent case in this jurisdiction, Kass v. Garfinkel,[32] serves to illustrate a specific exception to the general usury statute: the District of Columbia Court of Appeals there held that a revolving charge account which charges interest on unpaid balances at 18 percent (annual percentage rate) is not usurious. The rationale is that such extensions of credit are not loans but a time-price sale, which had previously been excepted from the general usury statute in this jurisdiction.[33] For present purposes, however, it should be noted that this type of transaction, although not defined as a loan and bearing high interest, is one in which charges are made only for unpaid principal balances.[34]

■ This review of District of Columbia cases raises the question of whether personal unsecured installment loans are to be considered under the same principles as secured loans, such as mortgages, for all purposes in this jurisdiction. For reasons that are fully set out below, the Court holds that they are.

### IV.  General Principles of Law.

As a first step in discussing the reasons for which the Court places personal

unsecured loans into the same category as secured loans insofar as computation of interest on unpaid balances is concerned, it would be well to review holdings in other jurisdictions. As a starting point, the Supreme Court case of Story v. Livingston[35] is noted. The Court there considered several exceptions to a master's report, one of which raised a question as to credit given payments on the debt in question during the course of the year. Defendant Story had loaned a sum of money to Livingston, secured by a deed on certain property. Story was in possession of the property, and received rents upon it, which rents served the purpose of periodic payments on the debt. The rents were credited as an annual sum by the master as of April 1, although the property was let from November to November. Livingston argued that crediting the rents received annually when they were actually received at intervals during the year meant that interest was being charged upon principal that was being repaid through the receipt of the rents. The Court agreed with this principle, saying that

> The correct rule, in general, is, that the creditor shall calculate interest, whenever a payment is made. To this interest, the payment is first to be applied; and if it exceed the interest

---

32. 299 A.2d 542 (D.C.1973). *See also* Kass v. Central Charge Service, Inc., 304 A.2d 632 (D.C.1973).

33. Morris v. Capitol Furniture & Appliance Co., 280 A.2d 775 (D.C.1971). *Accord,* Standard Oil Company of Indiana v. Williams, 288 N.E.2d 170 (Ind.App.1972); Sliger v. R. H. Macy & Co., 59 N.J. 465, 283 A.2d 904 (1971); Dennis v. Sears, Roebuck & Co., 223 Tenn. 415, 446 S.W.2d 260 (1969); Uni-Serv Corp. v. Commissioner of Banks, 349 Mass. 283, 207 N.E.2d 906 (1965), *contra* State of Wisconsin v. J. C. Penney Co., 48 Wis.2d 125, 179 N.W.2d 641 (1970).

There is one other specific exception to the general usury statute: 40 D.C.Code § 902 permits automobile purchase loans to be made on an installment basis without regard to the declining balance of principal. See note 78, *infra,* and accompanying text. Also

noteworthy is 26 D.C.Code §§ 601–612, the so-called "Loan Shark Act." This provision has been determined to be a licensing statute, unrelated to and unaffected by the usury statute. Indian Lake Estates, Inc. v. Ten Individual Defendants, 121 U.S.App.D.C. 305, 350 F.2d 435 (1965).

34. Some similarity to the loans involved in the case presently before the Court can be seen in the practice of these revolving accounts when a large purchase is made and the purchaser elects to pay it off gradually. In that case, the store automatically requires a minimum monthly payment, which has the effect of reducing the unpaid "principal" and interest is thereafter figured upon the reduced balance. *See* Kass v. Garfinkel, 299 A.2d 542, 543.

35. 38. U.S. (13 Pet.) 359, 10 L.Ed. 200 (1839).

due, the balance is to be applied to diminish the principal.[36]

This ruling became known as the "United States Rule" and has been noted frequently in federal courts to support the proposition that payments are first credited to interest, then principal.[37] Of interest here, of course, is the corollary principle that payments which have the effect of reducing principal require a refiguring of interest on that new principal balance.[38]

Story was a mortgage situation. However, decisions in some state courts have shown that the principle announced therein is also applicable to non-mortgage, unsecured loans. In Friend v. Bank of Eastman,[39] the court was called upon to decide if two different notes by the same maker were usurious. Under the controlling Georgia statute,[40] the bank was permitted to aggregate the principal and the interest at a rate not exceeding 6 percent, then divide that figure into 12 monthly installments. This section provided a clear exception to the general usury statute, which set the maximum interest rate at 8 percent.[41] In a brief opinion, the court found the first note to be valid, being the last in a series of renewal notes at six percent interest. However, the second note in question was found usurious, being "in the sum of $1080, comprised of $1,000 principal and $80 interest, repayable in 12 equal monthly installments of $90 each." [42] Because the 8 percent interest charged was greater than that permitted by the statute creating an exception for installment loans, it was found to be in violation of the general usury statute which is substantially identical to that of the District of Columbia.[43] This case is one in which the loan made, the controlling statute and prior case law as to the declining balance of principal are strikingly similar to the case at bar.[44]

---

36. 38 U.S. (13 Pet.) at 371, 10 L.Ed. 200. The Court found that there had not been sufficient evidence of the intervals at which rent was paid Story, and that the master acted correctly in choosing April 1 as a mid-point in the rental year, which had the effect of taking the declining balance of principal into consideration. *Id.* at 372–373, 10 L.Ed. 200.

37. *See, e. g.,* Nat G. Harrison Overseas Corp. v. American Barge Sun Coaster, 475 F.2d 504, 507 (5th Cir. 1973); United States v. Speed Queen Corp., 210 F.2d 357, 358 (7th Cir. 1954); Whiteside v. Washington Loan & Trust Co., 68 App.D.C. 172, 95 F.2d 83, 87 (1938); Gamble v. Wimberly, 44 F.2d 329, 331 (4th Cir. 1930); Ohio Savings Bank & Trust Co. v. Willys Corp., 8 F.2d 463, 466–467 (2d Cir. 1925).

38. The Court cited with approval a passage from Binnington v. Harwood, an English chancery case, which required recomputation of interest after a payment was made that had the effect of reducing the principal outstanding. 37 Eng.Rep. 1184 (ch. 1823). A reading of *Binnington* shows at that time, mortgage loan practice was to leave an "annual rest" which was the date upon which interest for the mortgage was due. The case held that whenever a payment was made that exceeded the interest due, the principal was reduced and a recomputation was necessary. It can easily be seen how

our practice of monthly payments, each reducing principal, came into being, and how our law recognizes the necessity of recomputing interest on the lower principal balance to avoid charging interest for money that has returned to the control of the lender.

39. 112 Ga.App. 756, 146 S.E.2d 110 (1965).

40. 57 Ga.Code Ann. § 116.

41. *Id.* § 101.

42. 112 Ga.App. at 757, 146 S.E.2d at 111.

43. 57 Ga.Code Ann. § 101 reads in pertinent part:

The legal rate of interest shall be seven percentum per annum . . . and any higher rate must be specified in writing, but in no event shall any person, company, or corporation reserve, charge, or take for any loan . . . any rate of interest greater than eight percentum per annum.
. . .

44. Union Savings Bank & Trust Co. v. Dottenheim, 107 Ga. 606, 34 S.E. 217 (1899), firmly established in Georgia law that computation of interest on a secured note must account for the declining balance of principal:

Calculating interest at the highest lawful rate on the principal of the debt for the full period of the loan, and dividing the sum of this interest and the principal into

In Hollamon v. First State Bank of Stroud,[45] the Supreme Court of Oklahoma held that the trial court erred in dismissing a complaint alleging usury by way of the defendant's failure to take the declining balance of principal into account. Before the court was a loan of $20,000, for which plaintiff executed a note in the amount of $23,000, payable in 23 monthly installments of $1,000 each. The court's conclusion was that

. . . . where the principal of a loan and interest thereon are payable in installments at specified intervals within the full loan period, and interest is computed in such a manner that allowance has not been made for the reduction of the principal by reason of the installment payments, if such interest exceeds the maximum contract rate of interest computed on the balance of the principal after each of the installments are paid, such plan is usurious.[46]

Another comparable case is that of Vee Bee Service Co. v. Household Finance Corp.[47] *Vee Bee* involved a much more complex situation than we have at bar: the Vee Bee Service Company contracted with the American Surety Company to operate, through various banks, a system under which the banks could make personal, unsecured installment loans. The two companies approached various banks, concluding agreements with 52 in all. The banks would make

loans to individuals, deducting from the principal of the loan first a 5 percent premium for "surety collateral,"[48] then would figure interest on the whole of the principal for the full term, discount that amount, and tender the balance. The Supreme Court for New York County held that such a premium charge constituted interest and made the loan usurious. For present purposes, however, the most important portion of the decision was that which dealt with the practice of discounting the interest in advance and thereafter requiring monthly installment payments upon the principal.[49] This device was a combination of the discounted loan[50] and the installment loan, such as is presently before the Court. As to the latter feature, the New York court said:

In the absence of express statutes permitting the same, the Courts have uniformly held that in the case of an instalment loan, the computation of an interest rate not exceeding the statutory maximum, on the original amount of the loan for the entire term of the loan, instead of on the decreasing unpaid balances, results in usury, if the amount of the interest thus charged exceeds the maximum statutory rate computed on the decreasing unpaid balance for the time that such balances are outstanding.[51]

---

notes of equal amount, and in number equal to the months embraced in the period which the debt has to run, will undoubtedly result in the debtor's paying and the creditor's receiving more than the lawful rate of interest on the principal of the debt.

34 S.E. at 221. *Union Savings* involved a mortgage loan, and may well have been the impetus for that exception to the general usury statute created by 57 Ga.Code Ann. § 116. For our purposes, *Friend* involves a loan made on similar terms to those presently before the Court, and *Union Savings* reflects the prior case law as to secured loans, much as the *Cooper* and *Atlantic Life* cases stand in the background of District of Columbia law.

45. 389 P.2d 352 (Okl.1963).

46. *Id.* at 355.

47. 51 N.Y.S.2d 590 (Sup.Ct.N.Y.Cty.1944).

48. This premium was divided between the bank on one hand (which deposited its share into a fund to cover defaults) and Vee Bee and American Surety on the other. 51 N.Y. S.2d 593–596.

49. This Court does not intend to draw by implication a parallel between the surety premium charged in *Vee Bee* and the credit check, processing and credit life insurance fees involved in the present loans. *Vee Bee* is referred to for its discussion of declining balance of principal in the setting of a discounted installment loan. See note 8, *supra*.

50. See note 12, *supra*, and accompanying text.

51. 51 N.Y.S.2d at 606–607 [citations omitted].

The conclusions to be drawn from these cases are clear: first, courts throughout the country have applied the rule of computing with regard to declining balance of principal to all types of installment loans, personal unsecured as well as secured. Holdings from those states which do not specifically exempt installment loans from the general usury statute [52] are uniform in this regard.

██ ██ Secondly, the Court has found no instance wherein any differentiation was made between secured and unsecured installment loans in this regard. The Court has searched to see if any such distinction exists, in light of the fact that the District of Columbia custom and practice has been to make mortgage loans in a manner which accounts for the declining principal balance, but to make personal unsecured loans without regard to the declining balance. The conclusion to be drawn is that whether a loan is secured or unsecured, under prevailing District of Columbia case law, and under case law of other jurisdictions,[53] the failure to take the declining principal balance into account can taint a loan with usury. Specifically, this means that the practice of the District of Columbia National Bank of computing interest on the loans in question without taking into account the declining principal balance was usurious, since it resulted in actual interest rates in excess of eight percent.[54]

## V.  Custom and Usage.

Defendant does not dispute the holdings of the many cases put forth by plaintiff as to computation with regard to the declining balance of principal. However, the Bank does assert a vigorous argument that the historical practice of the District of Columbia banking community has always been to make installment loans of the type involved here without regard to the declining balance. Such custom and usage, the Bank argues, must be accorded weight in deciding whether or not this practice is usurious.

The Bank points first to a long line of Supreme Court decisions which indicate the extent to which courts have at times relied on the customs and practices of the banking community for guidance in decisions involving bank practices: Yeator v. Bank of Alexandria,[55] Renner v. Bank of Columbia,[56] Mills v. Bank of the United States,[57] Bank of Washington v. Triplett,[58] and Thornton v. Bank of Washington.[59] Through this authority, the Bank urges that this Court look carefully at the long-standing banking practices in the District of Columbia before coming to a conclusion on the usury issue before it.

There is a major fault to this approach: none of these five cases involve the interpretation of a statute such as is before the Court now. In fact, each of them deals with common law principles

---

52. *See, e. g.,* 57 Ga.Code Ann. § 116; note 40, *supra,* and accompanying text.

53. For additional case references on both secured and unsecured loans, see Falls v. United States Savings, Loan & Bldg. Co., 97 Ala. 417, 13 So. 25 (1892); Castleberry v. Weil, 142 Ark. 627, 219 S.W. 739 (1920); Connor v. Minier, 109 Cal.App. 770, 288 P. 23 (1930); Manchester Realty Co. v. Kanehl, 130 Conn. 552, 36 A.2d 114 (1944); Agostini v. Colonial Trust Co., 36 A.2d 33 (Del. 1944); Fidelity Savings Ass'n v. Shea, 55 P. 1022 (Idaho 1899); Hurt v. Crystal Ice & Cold Storage Co., 215 Ky. 739, 286 S.W. 1055 (1926); Steffenauer v. Mytelka & Rose, Inc., 87 N.J.Super. 506, 210 A.2d 88 (1965), aff'd 46 N.J. 299, 216 A.2d 585 (1966);

Hayden v. Randles, 183 Okl. 8, 80 P.2d 235 (1938); People's Finance & Thrift Co. v. Varney, 75 Utah 355, 285 P. 304 (1930); Baske v. Russell, 67 Wash.2d 268, 407 P.2d 434 (1965).

54. See Appendix, Computational Methods, Charts 1–6.

55. 9 U.S. (5 Cranch) 49, 3 L.Ed. 33 (1809).

56. 22 U.S. (9 Wheat.) 581, 6 L.Ed. 166 (1824).

57. 24 U.S. (11 Wheat.) 436, 6 L.Ed. 512 (1826).

58. 26 U.S. (1 Pet.) 25, 7 L.Ed. 37 (1828).

59. 28 U.S. (3 Pet.) 36, 7 L.Ed. 594 (1830).

of contract law rather than a usury statute. All of the cases dealt with the time for presentment and demand for payment upon discounted notes, which, according to widespread local custom in the 1800's, was four days after the date due on the face of the note. The practice of the banks was to charge interest in advance, via the discount, for these additional grace days available to the maker (or endorser). Any reference to usury [60] was in the context of a bank collecting interest for the grace days, for which there was no provision on the face of the note. Therefore, it can plainly be seen that the bank was merely charging interest, in advance, for the actual number of days during which the maker could and in most cases would have the borrowed sum under his control.[61]

■ Argument based on custom and usage in this case is misleading. Custom and usage cannot contravene the requirements of the statute.[62] In the case of banking practices it may not legalize a usurious contract.[63] The instances in which custom and usage can influence the decision as to whether a given practice is usurious are few, and have been well summarized by one commentator:

> . . . the question whether a given practice is usurious has been frequently influenced, and sometimes decided, by the sanction given it by commercial custom. It has been held proper, where usury is alleged to be concealed under the name of exchange, to allow evidence on both sides to be

admitted, tending to show the usual rate of exchange at the two places at the time the bill was negotiated. Likewise, since, under commercial custom, for every practical purpose, days of grace, where allowable, are considered a part of a promissory note, their inclusion in the computation of interest in advance on the discount of a note is generally not considered usurious.

In a number of jurisdictions, the courts, according to local custom, permit the deduction of interest in advance, and, in computing interest, consider 360 days to be a year.[64]

■ Applying these limited instances to the case at bar, it becomes clear that the custom pointed to by the Bank cannot be decisive as to whether there was usury under 28 D.C. Code § 3301. These custom and usage interpretations have been accepted only in the absence of a statute on the point, and secondly, they involve only a small monetary difference in the interest actually charged. At bar is a situation controlled by 28 D. C. Code § 3301 involving a charge of at least 3.39 percent excess interest.[65]

The case law previously examined shows that the "eight percent per annum" of § 3301 means that eight percent interest is chargeable only on the money actually in the hands of or under the control of the borrower; the longstanding custom and usage of disregarding the declining balance of principal urged by the Bank cannot make valid

60. For example, defendant cites the following passage from Renner v. Bank of Columbia: If this [the general custom] is not the light in which these transactions are to be considered, all banks are chargeable with usury; for all take interest beyond what is allowed by law, if time is to be determined by the note itself.
22 U.S. at 586, 6 L.Ed. 166.

61. 45 Am.Jur.2d, Interest and Usury, § 170.

62. See, e. g., Walker v. The Transportation Co., 70 U.S. (3 Wall.) 150, 18 L.Ed. 172 (1865).

63. Harmon v. Lehman, 85 Ala. 379, 5 So. 197 (1888).

64. 45 Am.Jur.2d, Interest and Usury, § 170 (footnotes omitted). See also 25 C.J.S. Customs and Usages § 19(b). As to the 360-day computational year, however, see American Timber & Trading Co. v. First National Bank of Oregon, 334 F.Supp. 888 (D.Or.1971) (applying maximum legal rate to 360-day computational year held usurious).

65. See notes 74–76, infra, and accompanying text; Appendix, Computational Methods, Charts 1 and 2.

the usurious transaction complained of here.

## VI. The Discount Exception.

As has been referred to previously, an exception to the strict application of usury statutes exists for discount-type loans. This exception was first referred to in Fleckner v. Bank of the United States [66] and later reaffirmed by Evans v. National Bank of Savannah.[67] In both cases, the widespread bank practice of discounting was the key to the Court's decision:

> If a transaction of this sort is to be deemed usurious, the same principle must apply with equal force to bank discounts, generally, for the practice is believed to be universal. . . . It has always been supposed, that an authority to discount, or make discounts, did, from the very force of the terms, necessarily include an authority to take the interest in advance. And this is not only the settled opinion among professional and commercial men, but stands approved by the soundest principles of legal construction. Indeed, we do not know in what other sense the word discount is to be interpreted.[68]

> To discount, *ex vi termini*, implies the reservation of interest in advance; and, under the ancient and commonly accepted doctrine, when dealing with short-time paper such a reservation at the highest interest rate allowed by law is not usurious.[69]

The distinction that nullifies the applicability to this case of the custom and practice references of *Fleckner* and *Ev-* *ans* is that they apply only to a purely discounted loan. The Court has been unable to find a single instance in which the holding of these cases has been applied to any other type of loan. The loans at bar, according to the Bank, were discounted, but they also contain an installment feature. It is the impact of the installment aspect that removes this case from the purview of *Fleckner* and *Evans*.[70]

The recent District of Columbia case of *Ammerman v. Miller* [71] is helpful here. The United States Court of Appeals was faced with a complicated factual situation revolving about a loan of $125,000 at six percent interest with a "bonus" (reflected by notes totalling $136,000) of $11,000. The interest was to be paid in monthly installments, and the principal was due at the maturity of the notes. The difference between a "bonus" and a discount is semantic in nature—had the loan been denominated as one for $136,000 with a tender of $125,000, it would have been discounted rather than have carried a bonus. After disposing of questions concerning the nature of Ammerman's obligations as a guarantor, the court found that Maryland law controlled, and that under Maryland law, any bonus in addition to interest can, and in this case did, create a usurious situation.

Incidentally, it was Ammerman's contention that District of Columbia law governed. Had the court reached this conclusion under District of Columbia law, all interest would have been forfeited, not just the amount in excess of the lawful rate. The significant transactions rule governed and Maryland law

---

66. 21 U.S. (8 Wheat.) 338, 5 L.Ed. 631 (1823).

67. 251 U.S. 108, 40 S.Ct. 58, 64 L.Ed. 171 (1919).

68. 21 U.S. (8 Wheat.) at 354, 5 L.Ed. 631.

69. 251 U.S. at 114, 40 S.Ct. 58. The National Bank Act specifically permits national banks to make discounts at the maxi-

mum interest rate permitted by the state (or district) in which the bank is located. 12 U.S.C. § 85.

70. See parts III and IV as to controlling law on installment loans; notes 74–76 and accompanying text, *infra*, as to the impact of discounting vs. installment repayment without regard to the declining balance.

71. 488 F.2d 1285 (D.C.Cir.1973).

was applied. The court made it clear that the bonus aspect of the loan made it usurious.

■ This case was not the pure discount situation of *Fleckner* and *Evans,* nor was it the combination discount-installment loan that is at bar, as only interest, not principal, had to be paid monthly. It does serve to show, however, that the *Fleckner-Evans* exception is restricted to simple discount loans, and that combining discounting with any other means of exacting interest cannot excuse that loan from usury where the total amount of interest exacted exceeds that permitted by statute.

■ The conclusion to be drawn from these cases is that wherever periodic payments cause a declining balance of principal to be outstanding, it can be usurious to take interest on the entire principal amount of the loan for the full term, whether or not the loan contains a discount feature.

A brief reference to the impact of *Fleckner* and *Evans,* as opposed to the impact of ignoring the declining balance of principal, may reveal why no court has ever sanctioned the practice complained of here. If one borrows $1,000 at eight percent for one year, and the loan is discounted, that borrower receives $920. By paying at the end of the year the $80 interest as well as the $920 principal tendered, the borrower has been charged an actual interest rate of 8.70 percent on the $920 within his control for the term of the loan.

By way of contrast, if one borrows $1,000 at eight percent for one year and pays the total of principal and interest —$1,080—in twelve equal monthly installments of $90 each, the actual interest rate charged is 14.77 percent where the principal and interest are considered to be repaid evenly throughout the twelve installments.[72] Even by the method of interest computation most favorable to the Bank, that is, where the interest is considered to be paid back at the beginning of the term (thereby maximizing the time during which the borrower has use and control of the principal), the actual percentage rate charged is 13.83 percent.[73] The quantitative difference between 8.70 percent and 13.83 or 14.77 percent is obvious, and may well have influenced the discount loan exception.

Turning to the present situation, if one uses the method most favorable to the Bank in the instance of the Cohens' loan,[74] it reveals that the Bank charged an actual interest rate of 11.39 percent. As to plaintiff Susan Davis, her first loan bore an identical interest rate, but her second loan bore an actual rate of 13.29 percent.[75] Computing interest on the loans by the method least favorable to the Bank,[76] the same loans bore interest of 12.72 percent, 12.72 percent, and 15.13 percent, respectively. Clearly, the fact stands out that ignoring the declining balance of principal has a far greater impact on the borrower than merely discounting interest upon the principal.

VII. Congressional Inaction.

Both parties find support in the fact that Congress has not seen fit to intervene in the banking practice herein complained of: plaintiffs, because it indicates Congress has ignored the District

---

72. See Appendix, Computational Methods, Chart 8.

73. This is the priority method. See Appendix, Computational Methods, Chart 7.

74. The priority method. See Appendix, Computational Methods, Chart 1. This method does not compute the interest rate with regard to any discounted interest, as the computation in Chart 1 is based upon the amount tendered and the amount of the periodic repayment.

75. See Appendix, Computational Methods, Charts 2 and 3.

76. The residuary method. See Appendix, Computational Methods, Charts 4–6.

of Columbia banks' request for a higher legal rate of interest, and defendant, because it indicates acquiescence in the practice of disregarding declining balances.

Specifically, defendant Bank points to the rejection in 1942 of the Uniform Small Loan Act,[77] which would have authorized certain small loan companies to charge up to two percent interest per month, as a sign that Congress considered it preferable that the area banks should provide such loans according to their usual practice. Further, the Bank attempts to draw a favorable reference from the passage in 1960 of legislation to permit interest on loans for motor vehicle installment sales to be computed upon the whole principal for the full term of the contract, notwithstanding the reduction in principal from monthly payments. Such loans may carry a finance charge ranging from 8 to 16 percent, depending upon the age of the car.[78] Finally, the Bank notes the passage in 1971 of an authorization for federally-chartered institutions to make installment loans which may carry a finance charge (in lieu of interest) not to exceed 11½ percent annual percentage rate.[79]

Plaintiffs counter this latter point with the assertion that prior to the 1971 enactment of 28 D.C.Code § 3308, the District of Columbia banks had actively sought an increase in the maximum interest rate from eight to 16 percent, and that they had failed in this regard. Further, plaintiffs argue that Congress never having intervened in the small loan practice by raising the maximum interest rate shows that Congress considered eight percent to be the maximum permissible rate.

■ It is difficult to draw compelling conclusions based on inferences drawn from Congressional action and inaction. As to the rejection of the Uniform Small Loan Act, the debate preceding the vote in the House of Representatives sheds no light on the satisfaction or dissatisfaction of Congress with the policy of the area banks of making small loans without regard to the declining balance of principal.[80] The only conclusion that can be drawn from this vote is that Congress did not see fit to enact a small loan statute in 1942.

■ The passage of legislation permitting installment loans for automobile purchases without regard to declining principal balance creates a statutory exception to the general usury law. That is a different situation from the one at bar, and does not shed any favorable light upon the Bank's contention that it should be permitted to do the same with personal unsecured loans. Congress simply saw fit to create an exception for a certain class of loans only, and the passage of legislation favoring that class of loans with the treatment sought by the Bank for personal unsecured loans does not create a presumption that Congress intended the favorable treatment to extend to any other type of loan.

As to the 1971 passage of 28 D.C.Code § 3308, the statute itself shows the intent of Congress that the declining balance of principal be accounted for when making personal unsecured installment loans:

(a) On a loan in which the principal does not exceed $25,000 (other than a

---

77. 88 Cong.Rec. 274–75 (1942).

78. 74 Stat. 69 (April 22, 1960), codified as 40 D.C.Code §§ 901–910.

79. 85 Stat. 665 (December 17, 1971), codified as 28 D.C.Code § 3308. On December 29, 1973, Congress enacted another provision relating to the District of Columbia usury laws. 28 D.C.Code § 3309 now authorizes the District of Columbia Council to change

"any interest rate specified in this chapter." 87 Stat. 945 (Dec. 29, 1973), codified as 28 D.C.Code § 3309.

80. Only an occasional reference was even made to the District of Columbia banks during the course of debate. See 88 Cong.Rec. 264, 267 (1942) (remarks of Reps. Rich, McGehee and Smith).

loan directly secured on real estate or a direct motor vehicle installment loan covered by chapter 36 of this subtitle) to be repaid in equal or substantially equal monthly, or other periodic, installments, any federally insured bank or savings and loan association doing business in the District of Columbia may contract for and receive interest at the rate permitted under this chapter or, in lieu of such interest, a finance charge, which, if expressed as an annual percentage rate, does not exceed a rate of 11½ percent per annum *on the unpaid balances of principal.* (Emphasis added.) [81]

As the Bank has recognized, the subsequent enactment of legislation more favorable to the contention of the Bank does not have any retroactive effect.[82] Any favorable implication, however, would seem to be effectively rebutted by the plain wording of the statute as to unpaid balances.

The difficulty with the sort of analysis urged upon the Court by the Bank is obvious: attempting to draw conclusions from the action or inaction of Congress on related matters is fraught with speculation. Such analysis is not investigation into the legislative history of a statute to interpret its proper application to a given set of facts. Rather, it is searching for an intent of Congress that may not even have existed. In light of the compelling case law on the declining balance of principal question, the Court cannot come to a contrary conclusion based upon the alleged implicit acquiescence of Congress.

## VIII. Conclusion.

Case law in other jurisdictions has demonstrated overwhelmingly that computing interest without regard to the declining balance of principal can be a usurious practice, as it charges the borrower interest on monies not in his possession or under his control. Case law also shows that a general exception to usury statutes exists, at least for a bank chartered under the National Bank Act, in the case of a discounted loan. Where the two features are combined, however —as is the case here—the fact that a discount feature is present does not redeem the loan from the taint of usury insofar as the installment feature is concerned.

Merely because this has been the past practice in the District of Columbia for many years and because there has been no direct Congressional intervention to alter this practice cannot serve as justification for the procedure. It is the conclusion of this Court that the computation of interest on personal, unsecured installment loans without regard to the declining balance of principal is usurious where the amount of interest charged exceeds that which would be assessed by computing interest at the maximum permissible rate with regard to unpaid balances of principal.

## ORDER

This matter came before the Court on plaintiffs' motion for partial summary judgment and defendant's cross-motion for partial summary judgment. The views of the Court having been stated in the foregoing Opinion, it is by the Court this 27th day of March, 1974.

Ordered that plaintiffs' motion for partial summary judgment be and the same is hereby granted; and it is further

Ordered that defendant's motion for partial summary judgment be and the same is hereby denied.

---

81. 28 D.C.Code § 3308.

82. Defendant's Memorandum of Points and Authorities in Support of Motion for Partial Summary Judgment at 18.

APPENDIX:

## COMPUTATIONAL METHODS

There are several widely recognized methods of computing interest on installment loans, but for purposes of illustrating the impact of ignoring the declining balance of principal in this case, only three need be considered. The descriptions of these methods and the formula for finding interest yields is taken from *M. Ayres, Instalment Mathematics Handbook* (1946).

The residuary method is that which results in the maximum interest yield. Under this method, interest is considered to be paid by the final installment, meaning that the portion of repayment designated as principal is repaid before any interest is paid. This serves to minimize the period during which the borrower has use and control of that principal.

The priority method is that which results in the minimum interest yield.

Here, the interest is considered to be paid with the first installment, meaning that the principal is repaid last. As a result, the period during which the borrower has use and control of the principal is maximized.

Finally, the uniform method is that which attributes payments equally as between interest and principal throughout the term of the loan. Thus, principal and interest are repaid steadily, in a direct ratio.

The various charts below serve to illustrate the rates of interest collected by the Bank on the three loans in question by the method most favorable (priority) and least favorable (residuary) to the Bank. Also included are charts showing interest rate return for a $1,000 installment loan at eight percent for one year under all three methods.

The basic formula for finding the rate of interest in each of these charts is as follows:

$$\frac{\text{amount of interest x number of installments}}{\text{total outstanding principal balances}}$$

Chart 1: Priority Method for David and Carla Cohen loan of October 4, 1968

| | |
|---|---|
| Principal: | $747.72 |
| Amount designated as Interest: | $ 48.24 |
| Monthly payment | $ 67.00 |

| | | Payments | |
|---|---|---|---|
| Months | Principal Balances Outstanding | Principal | Interest |
| 1 | $ 747.72 | $ 18.76 | $48.24 |
| 2 | 728.96 | 67.00 | — |
| 3 | 661.96 | 67.00 | — |
| 4 | 594.96 | 67.00 | — |
| 5 | 527.96 | 67.00 | — |
| 6 | 460.96 | 67.00 | — |
| 7 | 393.96 | 67.00 | — |
| 8 | 326.96 | 67.00 | — |
| 9 | 259.96 | 67.00 | — |
| 10 | 192.96 | 67.00 | — |
| 11 | 125.96 | 67.00 | — |
| 12 | 58.96 | 58.96 | — |
| | $5,081.28 | $747.72 | $48.24 |

Interest Rate $= \dfrac{48.24 \times 12}{5081.28} = .11392 = 11.39\%$ per annum

Chart 2: Priority Method for Susan Davis loan of June 19, 1968

Principal:                                              $591.48
Amount designated as Interest:        $ 38.16
Monthly payment:                       $ 53.00

| | | Payments | |
| Months | Principal Balances Outstanding | Principal | Interest |
| --- | --- | --- | --- |
| 1 | $ 591.48 | $ 14.84 | $38.16 |
| 2 | 576.64 | 53.00 | — |
| 3 | 523.64 | 53.00 | — |
| 4 | 470.64 | 53.00 | — |
| 5 | 417.64 | 53.00 | . — |
| 6 | 364.64 | 53.00 | — |
| 7 | 311.64 | 53.00 | — |
| 8 | 258.64 | 53.00 | — |
| 9 | 205.64 | 53.00 | — |
| 10 | 152.64 | 53.00 | — |
| 11 | 99.64 | 53.00 | — |
| 12 | 46.64 | 46.64 | — |
| | $4,019.52 | $591.48 | $38.16 |

Interest Rate $= \dfrac{38.16 \times 12}{4019.52} = .11392 = 11.39\%$ per annum

Chart 3: Priority Method for Susan Davis loan of July 3, 1969

Principal:                                              $600.00
Amount designated as Interest:        $ 45.56
Monthly payment:                       $ 54.34

| | | Payments | |
| Months | Principal Balances Outstanding | Principal | Interest |
| --- | --- | --- | --- |
| 1 | $ 600.00 | $ 8.78 | $45.56 |
| 2 | 591.22 | 54.34 | — |
| 3 | 536.88 | 54.34 | — |
| 4 | 482.54 | 54.34 | — |
| 5 | 428.20 | 54.34 | — |
| 6 | 373.86 | 54.34 | — |
| 7 | 319.52 | 54.34 | — |
| 8 | 265.18 | 54.34 | — |
| 9 | 210.84 | 54.34 | — |
| 10 | 156.50 | 54.34 | — |
| 11 | 102.16 | 54.34 | — |
| 12 | 47.82 | 47.82 | — |
| | $4,114.72 | $600.00 | $45.56 |

Interest Rate $= \dfrac{45.56 \times 12}{4114.72} = .13286 = 13.29\%$ per annum

Chart 4: Residuary Method for David and Carla Cohen loan of October 4, 1968

| | |
|---|---|
| Principal: | $747.72 |
| Amount designated as Interest: | $ 48.24 |
| Monthly payment: | $ 67.00 |

| | | Payments | |
|---|---|---|---|
| Months | Principal Balances Outstanding | Principal | Interest |
| 1 | $ 747.72 | $ 67.00 | — |
| 2 | 680.72 | 67.00 | — |
| 3 | 613.72 | 67.00 | — |
| 4 | 546.72 | 67.00 | — |
| 5 | 479.72 | 67.00 | — |
| 6 | 412.72 | 67.00 | — |
| 7 | 345.72 | 67.00 | — |
| 8 | 278.72 | 67.00 | — |
| 9 | 211.72 | 67.00 | — |
| 10 | 144.72 | 67.00 | — |
| 11 | 77.72 | 67.00 | — |
| 12 | 10.72 | 10.72 | $48.24 |
| | $4,550.64 | $747.72 | $48.24 |

Interest Rate $= \dfrac{48.24 \times 12}{4550.64} = .12720 = 12.72\%$ per annum

Chart 5: Residuary Method for Susan Davis loan of June 19, 1968

| | |
|---|---|
| Principal: | $591.48 |
| Amount designated as Interest: | $ 38.16 |
| Monthly payment: | $ 53.00 |

| | | Payments | |
|---|---|---|---|
| Months | Principal Balances Outstanding | Principal | Interest |
| 1 | $ 591.48 | $ 53.00 | — |
| 2 | 538.48 | 53.00 | — |
| 3 | 485.48 | 53.00 | — |
| 4 | 432.48 | 53.00 | — |
| 5 | 379.48 | 53.00 | — |
| 6 | 326.48 | 53.00 | — |
| 7 | 273.48 | 53.00 | — |
| 8 | 220.48 | 53.00 | — |
| 9 | 167.48 | 53.00 | — |
| 10 | 114.48 | 53.00 | — |
| 11 | 61.48 | 53.00 | — |
| 12 | 8.48 | 8.48 | $38.16 |
| | $3,599.76 | $591.48 | $38.16 |

Interest Rate $= \dfrac{38.16 \times 12}{3599.76} = .12720 = 12.72\%$ per annum

Chart 6: Residuary Method for Susan Davis loan of July 3, 1969

Principal: $600.00
Amount designated as Interest: $ 45.56
Monthly payment: $ 54.34

| | | Payments | |
|---|---|---|---|
| Months | Principal Balances Outstanding | Principal | Interest |
| 1 | $ 600.00 | $ 54.34 | — |
| 2 | 545.66 | 54.34 | — |
| 3 | 491.32 | 54.34 | — |
| 4 | 436.98 | 54.34 | — |
| 5 | 382.64 | 54.34 | — |
| 6 | 328.30 | 54.34 | — |
| 7 | 273.96 | 54.34 | — |
| 8 | 219.62 | 54.34 | — |
| 9 | 165.28 | 54.34 | — |
| 10 | 110.94 | 54.34 | — |
| 11 | 56.60 | 54.34 | — |
| 12 | 2.26 | 2.26 | $45.56 |
| | $3,613.56 | $600.00 | $45.56 |

Interest Rate $= \dfrac{45.56 \times 12}{3613.56} = .15129 = 15.13\%$ per annum

Chart 7: Loan of $1,000 at 8 percent interest for one year, payable in twelve equal monthly installments of $90.00 each, computed by the Priority Method.

| | | Payments | |
|---|---|---|---|
| Months | Principal Balances Outstanding | Principal | Interest |
| 1 | $1,000.00 | $ 10.00 | $80.00 |
| 2 | 990.00 | 90.00 | — |
| 3 | 900.00 | 90.00 | — |
| 4 | 810.00 | 90.00 | — |
| 5 | 720.00 | 90.00 | — |
| 6 | 630.00 | 90.00 | — |
| 7 | 540.00 | 90.00 | — |
| 8 | 450.00 | 90.00 | — |
| 9 | 360.00 | 90.00 | — |
| 10 | 270.00 | 90.00 | — |
| 11 | 180.00 | 90.00 | — |
| 12 | 90.00 | 90.00 | — |
| | $6,940.00 | $1,000.00 | $80.00 |

Interest Rate $= \dfrac{80.00 \times 12}{6940.00} = .13833 = 13.83\%$ per annum

Chart 8: Loan of $1,000 at 8 percent interest for one year, payable in twelve equal monthly installments of $90.00 each, computed by the Uniform Method.

| | | Payments | |
|---|---|---|---|
| Months | Principal Balances Outstanding | Principal | Interest |
| 1 | $1,000.00 | $ 83.33 | $ 6.67 |
| 2 | 916.67 | 83.34 | 6.66 |
| 3 | 833.33 | 83.33 | 6.67 |
| 4 | 750.00 | 83.33 | 6.67 |
| 5 | 666.67 | 83.34 | 6.66 |
| 6 | 583.33 | 83.33 | 6.67 |
| 7 | 500.00 | 83.33 | 6.67 |
| 8 | 416.67 | 83.34 | 6.66 |
| 9 | 333.33 | 83.33 | 6.67 |
| 10 | 250.00 | 83.33 | 6.67 |
| 11 | 166.67 | 83.34 | 6.66 |
| 12 | 83.33 | 83.33 | 6.67 |
| | $6,500.00 | $1,000.00 | $80.00 |

Interest Rate $= \dfrac{80.00 \times 12}{6500.00} = .14769 = 14.77\%$ per annum

Chart 9: Loan of $1,000 at 8 percent interest for one year, payable in twelve equal monthly installments of $90.00 each, computed by the Residuary Method.

| | | Payments | |
|---|---|---|---|
| Months | Principal Balances Outstanding | Principal | Interest |
| 1 | $1,000.00 | $ 90.00 | – |
| 2 | 910.00 | 90.00 | – |
| 3 | 820.00 | 90.00 | – |
| 4 | 730.00 | 90.00 | – |
| 5 | 640.00 | 90.00 | – |
| 6 | 550.00 | 90.00 | – |
| 7 | 460.00 | 90.00 | – |
| 8 | 370.00 | 90.00 | – |
| 9 | 280.00 | 90.00 | – |
| 10 | 190.00 | 90.00 | – |
| 11 | 100.00 | 90.00 | – |
| 12 | 10.00 | 10.00 | $80.00 |
| | $6,060.00 | $1,000.00 | $80.00 |

Interest Rate $= \dfrac{80.00 \times 12}{6060.00} = .15842 = 15.84\%$ per annum