## WERBER v. ATKINSON.
### No. 1120.

Municipal Court of Appeals
District of Columbia.

Argued Oct. 3, 1951.

Decided Nov. 9, 1951.

Rehearing Denied Dec. 3, 1951.

Godfrey L. Munter, Washington, D. C., for appellant.

Frank Paley, Washington, D. C. (Bertrand Bernath, Washington, D. C., on the brief), for appellee.

Before CAYTON, Chief Judge, and HOOD and CLAGETT, Associate Judges.

CLAGETT, Associate Judge.

The trial court, sitting without a jury, gave judgment to appellee under an oral contract evidenced by an unsigned memorandum providing that in addition to her regular compensation as secretary to appellant, an insurance broker, appellee would be paid 15% of appellant's commissions on

pension trust business "placed" through his office providing that there was no other agent receiving a share in the commissions.

On this appeal appellant urges reversal principally on the grounds that the action was prematurely brought and that appellee was not entitled to any compensation under the agreement. first, because the business involved had not been "placed" when appellee voluntarily left his employment and, second, because there was another agent receiving a share of his commissions. Appellant also assigns as error various rulings and comments of the trial judge claimed, in the aggregate, to have prevented appellant from having a fair trial.

Appellee was employed by appellant in 1946 on a salary basis. Appellant obtained clients for various kinds of insurance business and then placed the policies with different insurance companies, receiving as his commissions a percentage of the premiums paid by the clients. He made a specialty of obtaining customers for retirement plans for the employees of corporations and other organizations, dealing first with the organization desiring to install a retirement plan and then presenting the plan to one or more insurers which provided retirement benefits and life insurance.

Retirement and insurance plans for the employees of two separate organizations are involved in the present litigation, one spoken of as Chestnut Lodge and the other as Columbia Federal. Consummation of the plans involved several steps. Aside from preliminary negotiations between the two organizations and the broker, there were two phases in each case. First, there was executed between each organization and trustees for the employees a "trust agreement" containing detailed provisions as to payments by employees and employer, retirement and death benefits, etc. Under each trust agreement the trustees were authorized to secure a policy or policies of insurance and retirements with an unspecified life insurance company. Second, there were actual applications to the New England Mutual Life Insurance Company, which, after medical examinations and payment of premiums, resulted in the issue

by the insurer of actual policies. In order to obtain the benefits, each employee was required to file an application with the insurer, including, among other things, answers to various questions as to age, physical condition, and past medical history, such as are found in usual life insurance policy applications. These applications were subject to medical check in behalf of the insurance company and, in fact, some of the applications were later rejected. When applications were rejected, premiums previously paid were returned.

Much of the trial was devoted to various interpretations of the meaning of the word "placed" as used in the agreement between appellant and appellee. Appellee claimed "placed" meant the dates on which the Chestnut Lodge and Columbia Federal organizations agreed to let appellant handle the business for them because it was then that she began the work of preparing various schedules and application blanks which, according to her, formed the basis of the extra compensation contemplated by the agreement between her and appellant. He, on the other hand, supported by the testimony of a bookkeeper for the insurance company who was called as a witness by appellee, claimed that "placed" meant the placing of the business with the insurance company and was not completed until medical examinations had been made, the individual policies accepted by the insurance company, and the premiums actually paid. It is the position of appellant that none of these latter steps were taken until after appellee had left his employment and that, therefore, the business not having been placed while she was in his employ, she was not entitled to any compensation under the agreement.

Appellee left appellant's employment June 26, 1950. She testified that the Chestnut Lodge case was "closed" May 15, 1950, and the Columbia Federal case was "closed" June 10, 1950, that both organizations entrusted the business to appellant on those dates, and that thereupon she became entitled to 15% of appellant's commissions when paid. The individual applications for the policies in the Columbia Federal case

were executed beginning June 26, 1950, and, as to most of them, June 29, and the last of them August 8, 1950. In the Chestnut Lodge case most of the individual applications were signed June 15, 1950, and the last on August 14, 1950. In both cases the applications contained a provision that insurance under them would not be effective until the first premium was paid. The pension trust agreement in the Chestnut Lodge case was executed June 27, 1950, and the pension trust agreement in the Columbia Federal case was executed July 24, 1950. As to Chestnut Lodge, the trust agreement recited that "this trust shall be effective May 15, 1950." The Columbia Federal agreement was to be effective "as of and from" July 1, 1950. It was the testimony of the bookkeeper of the insurance company that the premiums in the Columbia Federal case were paid August 16, 1950, and that the premiums in the Chestnut Lodge case were paid July 17, 1950.[1] It was also the testimony of the bookkeeper of the insurance company that commissions in connection with the Chestnut Lodge business were paid to appellant beginning August 1, 1950, and continuing through September 1950, and that the commissions were paid to him in connection with the Columbia Federal business in September 1950.

This suit was begun August 9, 1950, and the trial was commenced May 9, 1951. Appellant urges that the suit should have been dismissed because it was prematurely brought on the ground that appellee had no cause of action until after appellant had received his commissions and that such commissions were received by him after the date of the filing of the suit.

A plaintiff's right to recover depends upon his right at the inception of the suit, and the non-existence of a cause of action when the suit was begun is a fatal defect which can not be cured by the accrual of a cause of action pending suit.[2] If a plaintiff at the time he files his complaint has no cause of action, he can not by amendment or supplemental complaint introduce a cause of action that accrues thereafter even though it arises out of the same transaction that is the subject of the original complaint.[3] A suit which is prematurely brought can not be maintained, even if the cause of action has accrued by the time the cause is called for trial, nor can an amended petition in such a case set up a cause of action which has not accrued at the time the original petition was filed.[4] A complaint in a suit at law can not properly be amended to embrace a cause of action arising since the suit was begun.[5] An amendment dates back to the time of the filing of the original complaint.[6] In cases thus prematurely brought, the proper procedure is to dismiss the action without prejudice to the bringing of another action when the cause of action actually accrues.[7]

Apparently conceding the correctness of these rules and their applicability to the present case, appellee on this point urges only that appellant did not defend the action below on this ground. It is true that the defense of prematureness has been held to be waived when no timely objection was made.[8] But we think that in this case objection was seasonably made. Objections of this nature formerly were raised by pleas in abatement, but such pleas have been abolished by the Municipal Court rules,

---

1. A tender of a partial premium in the Chestnut Lodge case was made June 14, 1950, but this was rejected by the insurance company.

2. Tatum v. Townsend, D.C.Mun.App., 61 A.2d 478; American Bonding & Trust Co. v. Gibson County, 6 Cir., 145 Fed. 871, cited with approval in United States Ex Rel. Texas Portland Cement Co. v. McCord, 233 U.S. 157, 164, 34 S.Ct. 550, 58 L.Ed. 893.

3. 5 Cyclopedia of Federal Procedure (2d Ed.) § 1901.

4. Lindsay v. Evans, Mo.App., 174 S.W.2d 390.

5. Freeport Texas Co. v. Bowers, 2d Cir., 77 F.2d 288, certiorari denied 296 U.S. 613, 56 S.Ct. 133, 80 L.Ed. 435.

6. Chapman v. Griffith Consumers Co., 71 App.D.C. 64, 107 F.2d 263.

7. American Bonding & Trust Co. v. Gibson County, supra note 2.

8. 1 C.J.S., Actions, § 127; 1 Am.Jur., Actions, § 63.

based upon the Federal Rules of Civil Procedure, and here there was nothing in the complaint or bill of particulars which would have formed a basis for a motion to dismiss on the ground that the action had been prematurely filed. This defense was advanced by appellant's counsel in his opening statement and was specifically alleged in appellant's motion for judgment notwithstanding the finding of the trial court for appellee.

▉▉ This brings us to the question of when the cause of action (a term no longer used in the Federal Rules of Civil Procedure or in the Municipal Court rules but which still has a well understood meaning) accrued. It is fundamental that a cause of action in contract accrues at the time of the breach or failure to do the thing agreed to and that in the case of contracts calling for the payment of money there can be no action at law commenced for the recovery of the money before it becomes payable in accordance with the terms of the contract.[9] This was clearly a contract for the payment of money and the amounts, if any, due appellee were not payable until appellant had received his commissions. While appellant began to receive his commissions August 1, 1950, in the Chestnut Lodge case, he continued to receive them through September 1950, after the suit had been filed, and in the Columbia Federal case all of appellant's commissions were received after the filing of the suit. Furthermore, while some of the premiums in the Chestnut Lodge case, upon which appellant's commissions were to be based, were paid prior to the filing of the suit, all the premiums in the Columbia Federal case were paid after the filing of the suit. While, therefore, the suit may not have been entirely premature, we find nothing in the record to justify applying the rules as to actions premature in part.[10]

While our decision that the action was prematurely brought is dispositive of the case at the present time, we think we should make clear that we are not now deciding the merits of the present case. But we do deem it proper to suggest that if another action is filed there should be included in the evidence the arrangements between appellant and the insurer, if any, as to when and under what conditions he was entitled to receive his commissions. While appellee may have completed her work on these plans before leaving appellant's employ, it is clear that her rights remained subject to final rejection of policies and the resulting final determination of the amount due appellant from the insurer as his commissions.

We do not discuss the effect of the payments made by appellant to another agent because that question may not arise again.

▉ We also find it unnecessary to pass upon appellant's claim that he was not given a fair trial. We think, however, we should mention that after appellant had been examined by his own counsel on direct examination and before appellee's counsel said anything the trial court stated: "You don't have to cross-examine him." This was before other testimony had been taken. Appellant claims that this, among other incidents, shows that the trial judge had made up his mind about the case long before its conclusion. Juries are often and appropriately told by the court to try to keep an open mind until the conclusion of the case. It is obvious that judges should do likewise.

We also think we should mention that while one of appellee's witnesses was testifying appellee herself very frequently interrupted to suggest the answers to questions and interjected other remarks. The trial judge very properly sought on one occasion to stop this practice, but appellee continued it without further rebuke. Such repeated interjections by appellee could easily have led to a mistrial being declared.

Reversed with instructions to dismiss the action without prejudice to file a new action.

CLAGETT, J., who wrote the foregoing opinion, died before its publication.

9. 1 Am.Jur., Actions, § 62.

10. 1 C.J.S., Actions, § 127.